Case No. 15-5309, State of West Virginia, Ex Rail Patrick Morrissey, Appellant, the United States Department of Health and Human Services. Mr. Lin for the Appellant and Ms. Powell for the Appellee. Good morning. Good morning. Good morning and may it please the Court, I'm Albert Lin, Solicitor General for the State of West Virginia. I have reserved three minutes of my time for rebuttal. West Virginia has been injured in this case by the federal government's delegation to the state of the sole responsibility over the enforcement or non-enforcement of existing federal law. The burden on the state is similar to the burden suffered by any party or entity who has ever been told, quote, it's on you. For example, a nationwide law firm issues a rule that says no pets are allowed in the workplace. It then issues a second rule that says each office manager shall have the unilateral discretion to determine whether this pet rule applies within his or her office. That second rule imposes a burden, delegates to each office manager the unilateral responsibility to decide whether the pet rule applies. And that's a burden. It's a burden on that office manager who now has to take a position on whether pets are allowed in the workplace, a burden that did not exist before. But under your theory, wouldn't that burden have already been, well, in this case, the burden, so to speak, was already on the state from the moment that the Affordable Care Act was passed? No, Your Honor. The difference, we think, is if you had to take the pet example, if the law firm issues the rule and says you have, office manager, have the unilateral, you have the discretion. However, if you don't enforce the pet rule, we shall enforce it. That's what the Affordable Care Act's regime was. The administrative fix essentially strikes through the federal government shall enforce. And it makes the law, if you can imagine a hypothetical law, it says here is what is required as a matter of federal law.  Paragraph B, the states have the discretion to decide whether or not these requirements will be enforced. Period, full stop. You can just not enforce, though. We can just not enforce, that's true. But it's the delegation of that burden, it's the responsibility for making that choice that is the harm to us here. It didn't exist before under the statutory regime. I suppose the statute had provided no federal enforcement at all. It just delegated to the states the choice. And that, we think, is what's happened here. No, no, no. Would you have standing to challenge if you had complete choice whether or not to enforce? No federal role at all. That's right. Yes, because we think that's the position that we're in right now. I know, but I'm trying to figure out whether you would have even had standing if the statute had provided that with no federal enforcement role at all. We think so. And we think it's very similar to the situation that was in Carter Cole, the 1936 case where the court decided that the legislative delegation was delegation in its most obnoxious form. And what happened there was that the federal government passed a law. It had a lot of different provisions in it. But one particular provision said that it gave the discretion to determine the maximum working hours and the minimum wage to the majority of the private coal producers, and that whatever they determined would apply to the minority of private coal producers. That's, we think, a sort of analogous situation here, which is that the federal government has – to enact some state law or not. Here, they have actually passed a federal law. There is a law on the books that says that these eight market requirements have to apply to every insurance plan that's sold. And then they have – But as to the state, it doesn't require the state to do anything, correct? As to the state, what it – under the statute, it doesn't. It gives us the right of first refusal. Nor under the reg does it require the state to do anything. That doesn't mean you lose, necessarily, but it's not a compulsion. True. Right. It's not, for instance, like the situations in New York and Prince, where they actually said, do this one particular thing. You don't have any case really in point, do you? Well, the case that we have that's closest, we think, is the Carter-Cole case, which involved delegation to a private entity. And it's sort of not clear whether the court decided standing there because it's – That's my point. It isn't – the court didn't even discuss standing. That's true, but it also – And we know, because the Supreme Court has made clear over and over again, if it doesn't discuss standing in a particular case, it's not precedent on standing. That's correct, Your Honor. It's not directly precedential. But, again, if you look at this court's decision in Lamont – It's not precedential at all is what they've said. Right, but this court has taken – has looked at those decisions and has taken some meaning from them. And if you look at Lamont, where they found standing for the local law enforcement officers to allege state sovereign – a harm to their sovereignty, this court looked at Prince and said, this is what the court held in Prince as a matter of the merits, and we think that it's sort of – we can take from that that, of course, these individual law enforcement officers would have standing. And it's in that decision where this court has done that very thing. Let me ask you a different angle from the one you've presented. Suppose there's no state enforcement role. Suppose federal drug laws and the federal government says, we're not going to enforce certain federal drug laws. Does a state have standing to sue, to compel the federal government to sue, to enforce those federal drug laws because of the effects on the state? I think that's a different situation, Your Honor, because I think here there was – as you said, in your hypothetical, there's no formal state role. Here, the statute actually says, here's the role that the states play. The states may do the following, and then the federal government shall. And again, I think – In that hypothetical, what do you think about the standing situation there? Because arguably that is the situation because the state doesn't – is not forced to do anything here. I think it's different because here the combination of the rule and the language in the statute formally places this responsibility to make the choice on the states, whereas in the federal drug laws there is no formal role for the states to play at all. And I think that's the difference. And I think if you had a statute, as Judge Silverman suggested, that said, A, here is the law. We gave a meat inspection, meat quality standards hypothetical in our brief. A, here are the standard federal meat quality standards. B, these federal meat quality standards shall be enforced at the discretion of the states, shall be enforced at the discretion of a private entity, the National Cattlemen's Association. We think in either of those hypothetical situations, either the state or the private entity would, it seems to us, surely have at least the right to come into court and ask and have their day on the merits and say we don't want this burden, but the federal government has given it to us. What relief exactly would you envision us giving you here? Well, Your Honor, we have asked for at a minimum a declaratory judgment that says that what they've done is unlawful. We've also asked the district court for whatever further injunctive relief he or she in this case. A declaratory judgment presumably would entail them, them being the federal government, having to enforce a law that they've chosen in their discretion not to enforce. Yes, it could be. I think it could be written in that way. And we think, you know, the federal government has suggested that there is no redressability here, but we think that the case of Clinton v. City of New York has made very clear that a declaratory judgment is enough to redress your injury. And in that case, that was the line-item veto case. And the individuals had complained about particular provisions of the law that had been line-item vetoed, and the court found without really any discussion at all that of course causation and redressability are satisfactory. Well, wait a minute. What would the declaratory judgment do? What would be the implication? Well, it would say that what they've done here is unlawful. So? And, I mean, it could go further. I mean, we've asked also for whatever injunctive relief the court thinks is appropriate. So they could-he could vacate and remand or remand-vacate. Well, a statement that the federal government's action is unlawful by itself doesn't redress your injury at all. I think-we think it does in the same- How? Why? In the same way that the declaratory judgment in- No, no, I'm trying to-don't use an analogy. Tell me why it would redress your injury in this case. Because it would declare that what they've done is unlawful. And to the extent- That in 10 cents might get you on a trolley car. I don't get-I don't understand where your redressability is. Well, we think that by declaring it unlawful, it makes clear that this is not something that the state is responsible for. And, you know, to the extent that we've argued that this intrudes on our sovereignty because the federal government has pushed us into their lane, right? So dual sovereignty involves sort of these two lanes where the state stays in its own lane, federal government stays in its own lane. By declaratory judgment that this is unlawful, it makes clear that we are not-we are not responsible for making this choice. However, we-I really don't think it's-it's a question that needs to be answered because we have asked for injunctive relief and- What's injunctive relief? We've asked for-whatever further injunctive relief the court would- Well, let me-tell me- We would ask for-we would ask for vacature. We would ask for vacature of the rule which would redress our harm. Which would mean, in essence, an order that they enforce the law as written. That's correct, Your Honor. Now, what about the idea that-and maybe you haven't raised this- but the idea that the state is being forced, if it wants to enforce, to spend money that under the statute it wouldn't have to spend to enforce because under the statute you can defer to the federal government to enforce. Is that-how are we supposed to think about that in this case, or is that even part of this case? I think that's part and parcel of it because I think if you really break down the problem with the delegation, it's that we have sort of two choices that-either choice is harmful to us. And I think if we have to-if we have to enforce these laws, we do have to spend money. And if we don't enforce these laws, we bear the accountability for not enforcing the law. How can you say that's part of this case? I didn't see that in your brief. I didn't see that in your complaint. We-in the complaint we allege that the administrative fix has harmed us by changing the nature of the political accountability for this choice. And we would say that that is- That's a bit different, though, from the expenditure of money. Under the statute, the law could be enforced because it requires the federal government to enforce without the state spending any money at all. With the administrative fix for the law to be enforced, you're going to have to enforce it and therefore spend money, right? But I didn't-I don't know if that theory-I'm not sure-  you can avoid it by not enforcing. And so our argument here is that- That's why you didn't present that argument because you knew it wasn't going to cost you a thing if you didn't enforce. And so what we've argued, Your Honor, is that merely being put to that choice without the federal government as a backstop is the injury here. And just on the hypo, because I don't think we ever nailed that down, if the state had no role in enforcing a law, the federal government was responsible, the federal drug laws, and the federal government chose not to enforce certain federal drug laws, does a state have standing because of the repercussions for that state? And we think that that would be different. It would be a situation, first of all, we don't think you need to reach it, but second of all, we think the important distinction here is that there is a formal role that's given to the states. And another way to think about the difference is, you know, we don't dispute that this was originally constructed as a cooperative federalism regime where there's a choice for the states to act. And if the states don't act, then the federal government must act. And this Court has found in a number of Clean Air Act cases, including a case called West Virginia v. EPA and National Association of Clean Air Agencies, that the states have standing to challenge a rule implementing a cooperative federalism regime. If you're correct, if this situation provides standing, then is it not correct that anytime Congress passes a law giving a state authority to either enforce or not to enforce a statute, you have standing to challenge that? If the federal government, in two situations, one, if that's all that there is in the statute, Your Honor. So these are the federal standards. You have an injury if Congress passes a law giving you authority to either act or not act. And there is no federal role. Yes. We would say yes, in that situation, absolutely. Why? Because again, we think that... Anytime you're given a choice to act or not to act, you're injured. Anytime we're given the choice to enforce or not enforce the federal standards, where the federal government does not have a backstop role. Well, that would be true whether or not it was an enforcement. If you're correct, anytime Congress gives you the state's authority to either act or not act, there is an injury. No, Your Honor. I think the difference would be what we're saying here is that if there is a federal regime in place, a federal law in place here, there are eight market requirements that make these things, these insurance plans, illegal. If they give us the choice whether to enforce or not enforce that existing federal law, then yes. It wouldn't matter for your theory of standing. Your theory of standing is anytime we're given the responsibility to act or not act, we're injured. So that could be an enforcement case. It could be any kind of federal statute. In other words, as I detect your injury argument, anytime you're given a choice, that gives you an injury or anything, whether it's enforcement or not. I don't see the – I think there's a distinction there, but, Your Honor, even if there isn't, I don't really see a problem with that theory of standing because, first of all, this doesn't happen very much because the federal government does not give states the unilateral discretion to implement a federal regime that's in place or not. That doesn't happen. I think they do. What about 14F of the National Labor Relations Act, giving states the authority to authorize right-to-work laws? Your Honor, I see my time has expired, but if I may answer the question. Again, I think that that's different in kind because that's giving states the ability to – it's giving them the option to enact their own laws and to enact their own state regimes. And that's responsibility. That's political responsibility. Therefore, there's an injury under your theory. That's political responsibility, Your Honor, for state laws that, of course, we always have. For state law that would modify federal law. Right, but there's still state laws and state laws that we – it's political responsibility that we deserve, that, of course, we should have. But again, in this situation, they're not asking us to enact state laws. They're saying here are the federal laws. These are the federal provisions. And it's up to you whether these plans are actually going to be legal. But it's actually good for the states in some respect because you have complete control over whether to enforce or not this law. It depends on how you look at it, Your Honor, because, I mean – The federal government is staying out of the enforcement and leaving it up to each individual state whether to enforce, right? Again, I think it depends because there are people who like these requirements and there are citizens who like them and citizens who don't like them. And so I'm not sure that it's necessarily a good thing. But that's the point. It's up to you as the state to decide in your state whether you like them or not. But I think that is the point, Your Honor, which is that the federal government has – The decision whether to do that is the injury. Right, and they have enacted a federal law, and they should take responsibility for it. It's not for them. It cannot be the case that they can enact a federal law and make it someone else's decision or problem as to whether or not – It's just interesting. As you well know, usually the complaint from the states is that the federal government is doing a one-size-fits-all kind of situation. And here, actually, it's each state can chart its own course. Understood, Your Honor. Understood. Of course, the underlying merits issue here is that they have exercised what they claim is enforcement discretion when it really, really isn't. And they've done that in cases where they think that they can argue that no one is harmed by this. But in this case, the state is. Okay, great. We'll give you time on rebuttal. Thank you. Good morning. Good morning. May it please the Court, Lindsay Powell for HHS. The district court correctly dismissed for lack of standing here because West Virginia has not alleged a cognizable injury and any injury that it has asserted would not be redressed by the relief that it seeks. With respect to addressability, the state has made clear that it does not want enforcement. It says that in the complaint repeatedly. You can see it at JA-9 and JA-39, where the relief that it asks for is a remand to HHS to permit the administration to work with Congress. The notion asserted by counsel in this argument that, in fact, the state does want a remand with vacator is new and inconsistent with what counsel had said in the brief previously. Suppose that they did want enforcement, though. I mean, we certainly don't think it changes the bottom line on standing. But it is fairly remarkable here, as a matter of redressability, that they do not want that enforcement. What they want is a remand that keeps the status quo in place so that the administration can work with Congress. And that's, of course, not something that the court can order. It's a very speculative outcome that may or may not result from a remand order in this case. And that's not relief in the sense necessary for Article III standing. The state has also failed to allege a cognizable injury, for the reasons already suggested by the panel. The choice put to the states is put to them by the Affordable Care Act itself. It makes them the primary enforcers, which has traditionally been the case even before the Affordable Care Act. The Public Health Service Act first established this relationship of cooperative federalism. So the states have always been in the role of deciding in the first place whether to enforce these federal requirements. And then if HHS makes a finding that a state has substantially failed to enforce, then the federal government has responsibility for enforcement. So this decision, this choice, has always existed. It's not the product of the transitional policy. One way to think about it, though, is the federal statute guarantees that, at least by its words, that the federal government will enforce, thereby relieving the state of the obligation or decision to enforce and saving it the money that it costs to enforce. By the federal government not doing that, the state, if it wants it to be enforced now, has to expend money. Two things, Your Honor. First, the state, even before the transitional policy, did have to make a choice. It still had to decide whether to enforce or not. So to the extent that there's a burden in that choice, it preexisted the policy. True, but they knew then that the federal government would enforce. In other words, the costs of enforcement would be borne by the federal government under the statute, not by the states. Now, after the administrative fix, the costs will be borne by the state government if it's going to be enforced. With respect to costs, those are not actually in this case. As it was observed before, they're not in the complaint. It's not in the briefing. That is not the harm that the state has claimed here. Of course, if, to take my colleague's point to the next step, you would concede, certainly, if the state was obliged to enforce in the absence of federal enforcement, there would be no question the state would have standing. Yes, if the state were actually compelled. If its action were compelled. Then it would have to spend money. Then it would have to spend money, and I think we would then be in a place where certainly the resemblance to traditional Tenth Amendment cases would be stronger, that you'd have a greater argument to a sovereign. What about the Tenth Amendment argument there? There's a subtle point that an appellant raises, that West Virginia raises. They say this is a Tenth Amendment violation, and you have to assume the merits in a standing case. Therefore, since we argue that there's a Tenth Amendment violation because of this confusion of sovereignty, therefore the standing issue merges with the merits, and you have to assume the merits, therefore you assume standing. Well, and at the same time, Your Honor, they insist that we should not merge the standing inquiry with the merits, so it's sort of a puzzle that way. In district court, the state did take the position that there would be standing any time there was a colorable Tenth Amendment claim, essentially for the reason Your Honor just stated, and there's no precedent to support that. That simply is not what the cases say. The cases that the state principally relies on are, of course, Prince, New York, and Lamont. Prince and New York expressly involved federal provisions that did compel or coerce the states in the traditional sense, and in Lamont, the allegations were to that effect. But isn't that a merits determination, whether there is actual compulsion? Yes, but the state relies on the same analysis for its standing. Those are the cases to which it points, and there is no separate standing inquiry there. So to the extent that we look to those cases at all, I think the question... Prince and New York, the standing was so obvious, the court never discussed it. Yes, that's right, Your Honor. So they are alleging harm. Well, they assert that they're alleging two different harms. The first is one to a sovereign interest that they borrow from these Tenth Amendment cases for. The second, which the district court correctly observed, collapses into the first, because both are actually about this feeling of additional responsibility. But they say that a private party put in the same position would nevertheless feel it, and the only case they cite for that is Carter-Cole, which does not actually support the proposition it's cited for. Why not? Carter-Cole was about many things, as Your Honor pointed out. It did not address standing specifically, but in those consolidated cases, many of the parties were in the position of challenging being put to a course of choice, either pay a tax that was found to be punitive or submit to the scheme of federal regulation. And I think it's easy to identify injuries other than the one the state suggests there. But it is conspicuous that that's their only case. There is nothing else to suggest that there would be standing in those circumstances, and we don't think there will be. Would it have standing in this case to enforce, I mean to sue, to challenge the alleged non-enforcement of the statute? I don't know, Your Honor. We are not currently aware of any party that has identified a cognizable injury in fact in order to sue for this. I can't say categorically that nobody could sue, but certainly the state is not the party that has brought forth the necessary allegations to bring this challenge. When the government took the action it took, did it contemplate that no one would have standing to challenge? To my knowledge, that inquiry was not undertaken, Your Honor. I'm not aware of that determination. But West Virginia is... That's if no one has standing to sue. This is a statute that mandates certain things in health insurance. And the government is saying we're not going to enforce those despite the mandatory statute, as a matter, I assume, of prosecutorial discretion. Is that correct? That is correct, Your Honor. And it is important. This gets more to the merits which are not presented. But I just want to be clear that this is a transitional policy and it's fairly narrow in its effect. It only applies in the small group and individual markets and only to plans that were already... The word narrow I don't think really applies correctly to something that affects so many insurance companies and insurance plans and insured parties. So I'm not sure that's an accurate word here. Well, I just wanted to be clear that it does also. This is not every plan in every case by any means. It's certain of the reforms with respect to certain policies that were already in effect. And as HHS explained... But it's certain... I don't want to get too far in the merits, but you're trying to minimize this. And it does seem certain critical reforms in the statute which were unilaterally suspended by the executive branch. Yes. I think HHS exercised its discretion to ensure that people in the course of the transition did not lose policies that they wanted to keep, particularly when the alternative for some people might have been going without a policy because... Right. There's a good reason why they did it. I grant you that. I'm just saying the statute said X and the executive branch said that's going to... Actually, to follow the statute would cause some harm, so we're not going to enforce the statute. You could always encourage us to reach the merits. Your Honor, those are not presented at this time. If the state alleged in its complaint that we always intended to enforce this provision of the statute and we were relying upon the federal government to do so and then once the administrative fix came out, we started enforcing and because we believe that it should be enforced and we're incurring the costs, would that state have standing? So again, that's... I understand that's your position, that that's not this case, but if that were the case, would the state have... As I think it was suggested earlier, that the state in that position would be still making a choice to undertake those expenditures. It wouldn't be being put in the position where it's having to do that, being forced to do it. That would be a choice by the states, and we think that sort of manufactured standing does not give rise to a cognizable injury. The reason I was asking about the merits is I'm trying to figure out, and maybe this can't be solved in this case. In fact, I'm pretty sure it won't be solved in this case, but who has standing among the citizenry, if anyone, to challenge the failure of the government to enforce a statute against private parties? Again, Your Honor, with respect to, you know, the policy here, we're not currently aware of any citizen who has been harmed in the necessary way and can bring those allegations, but I can't say there isn't such a person. So it's hard to identify the hypothetical in these circumstances, but even if there weren't such a person, it wouldn't follow that they're standing here. Sometimes it's just... Right, no, that's why I said it wouldn't be part of this case, but just thinking about the... You're saying the state doesn't have standing and they're holding out, I think, although you're not doing it overtly, but holding out the idea, well, maybe someone else has standing, but I'm not sure the government's theory is that anyone will ever have standing on a case of prosecutorial discretion. And I'm not able to say here, you know, which case, if any, someone would have such standing, but this case is a particularly easy one because of the redressability issues, because there is no coercion or compulsion. There's an exercise of authority pursuant to the pre-existing allocation made by Congress here. It's also significant to consider the breadth of the implications of the state's position, and these have also been alluded to by the earlier questioning. But it's not clear what would distinguish this case from the example of concurrent jurisdiction, where, you know, states and the federal government both have authority to regulate drug offences, and if the federal government exits that arena, doesn't it put more pressure on the states, particularly a state that wants drug laws to exist, to be enforced? The state feels more pressure, surely in those circumstances, to regulate or to enforce. And it's unclear why that burden, that sort of amorphous, abstract feeling of political accountability, is any different in that context from the similarly abstract theory that the state relies on here. And it would be an extraordinary expansion of standing to find an injury, in fact, in those circumstances. Similarly, there are myriad federal statutes that give enforcement authority to the state, that allow the states to get into federal court to sue to enforce federal statutes. And there, too, a decision not to enforce by the federal government would surely make some states feel more pressure to take that enforcement mantle themselves. How many schemes are you aware of that say the states may enforce, the federal government shall enforce? I have not looked at that exhaustively, but I'm aware of at least a dozen. There are certainly many of them. Spanning what fields? Many of them are in the area of consumer protection, but there's also shared authority in the antitrust area. In the CFPB? I haven't looked at that one, but there's, I think, flammability standards, telephone standards. There's a long list, certain drug provisions. And then last question, just to give you an opportunity, Mass v. EPA is not dispositive here because? Because the central injury being alleged by the state was a sovereign harm to the state's interest in its own lands. It said that failure to regulate... Well, Justice Stevens talked a lot about abstract notions of sovereignty before he got to the land. Well, but the land is emphatically in there, and that's an interest that's not present in this case. I think the court... Well, the discussion Justice Stevens made and indulged in concerning abstract notions of sovereignty was not what he relied on. But it does provide a certain confusion, does it not? There are some statements in that case that are broader than others, but in the majority opinion is the reliance on... So you totally disavowed Justice Stevens' abstract discussions, is that correct? I do no such thing, Your Honor, but Mass v. EPA is distinguishable for many reasons, including the one that I said. The court also pointed there to the fact of a procedural harm, which is not something that the state has alleged here, so that's another basis for distinguishing it. If the court has no further questions, we ask that you affirm. Thank you. I'll give you two minutes for rebuttal. Thank you, Your Honor. Just a couple points. I think the first one that I would start with is there's been some talk about what are the consequences of what we're asking for here, and I'm not sure which dozen statutory regimes my friend is talking about, but if they're all cooperative federalism regimes, the kind that we're discussing, where the state has the right of first refusal, but the federal government shall backstop that. We think that it would make complete sense for the states to have standing in situations where the federal government has fundamentally changed the cooperative federalism regime. Your theory of injury wouldn't matter whether the federal government was a backstopper. Any statute that gave the states the right to either act or not act would create standing, under your theory. It's political accountability, therefore we're injured. It's political accountability to the extent, again, that there is a federal regime that we are being required to enforce or not enforce. And again, the point that I'm trying to make... Of course you'd have to have a federal regime, otherwise you wouldn't. But it doesn't matter, your position is not limited to enforcement. The point that I'm trying to make, Your Honor... Do you understand what I mean when I say it's not limited to enforcement? I do, but I think what's important to remember here is the federal government has designed a particular regime to encourage state participation. A cooperative federalism regime of the unique kind that the Supreme Court has said is constitutional. Because of the way that it's designed, it skirts the sovereignty problems. What they have done is they have fundamentally changed that regime. It seems to us to make sense that when they have fundamentally changed one aspect of a regime that is specifically designed to protect state sovereignty, that it would make sense for us to be able to come in here and claim that what they've done is unlawful. Who else do you think has standing to challenge this, if anyone? We're not sure. As you heard the federal government say today, there was another case before this Court when an individual has brought suit challenging the administrative fix, and they've argued that his harms there are speculative because he can't prove that the administrative fix has caused his premiums to change in any way. So far as we know, we're not sure that there would be any... And we think it makes sense, again, for the states to be able to have standing here. I had one more point, but... You can conclude. The only other point that I want to mention is in response to Judge Silverman, I do think that there's an important distinction between merits and standing. And I think, Your Honor, you should please take a look at the Lamont case where this Court said, you've alleged compulsion, therefore you have standing. However, on the merits, we find that there is no compulsion, therefore you lose on the merits. The federal government's attempt to distinguish that case is nonsensical. They say, well, if you've alleged something that is factually similar to New York and Prince, then you have standing, and only in that case do you have standing. But then even if it's not true, even if it turns out that on the merits, the Court concludes that actually you weren't compelled. And I don't see how they can distinguish that case from ours, where the facts that we've alleged are true and undisputed. And I think, at a minimum, there is a colorable allegation of a Tenth Amendment violation. Thank you. Thank you, both counsel. The case is submitted.
judges: Kavanaugh, Wilkins, Silberman